**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SETH GILLMAN | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2016 cv |
| | ) | |
| vs. | ) | |
| | ) | |
| MOISHE GUBIN | ) | Assigned Judge: |
| MICHAEL BLISKO | ) | |
| LBG REALTY, LLC, an Indiana Limited | ) | |
| Liability Company | ) | Designated Magistrate Judge: |
| 2325 POINTE PARKWAY LLC, an Indiana | ) | |
| Limited Liability Company | ) | |
| BELHAVEN NURSING AND | ) | |
| REHABILITATION CENTER, LLC, | ) | |
| an Illinois Limited Liability Company | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff SETH GILLMAN ("Gillman") by his attorney Alon Stein of Stein Law Offices, for his Complaint against Defendants MOISHE GUBIN ("Gubin"), MICHAEL BLISKO ("Blisko"), LBG Realty, LLC ("LBG"), 2325 POINTE PARKWAY, LLC ("2325") and BELHAVEN NURSING AND REHABILITATION CENTER, LLC ("Belhaven") states as follows.

### JURISDICTION AND VENUE

1.      Jurisdiction herein is based upon 28 U.S.C. §1332 in that this is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2.      Venue is based on 28 U.S.C. §1332 in that Gillman is a resident of the Northern District of Illinois, Eastern Division and a substantial part of the events giving rise to the claims

herein arose in said District and Division. Specifically, Gubin and Blisko regularly do business in Illinois as they are owner/operators of approximately 15 nursing homes (Infinity) as well as other businesses, and they maintain two offices, one in Hillside, Illinois and the other in Chicago, Illinois. Gillman would regularly meet with Gubin and Blisko in Chicago to discuss business and this matter specifically. In addition, the Unit Purchase Agreement at issue in this case provides in Paragraph 14 that the Agreement shall be governed by the laws of the State of Illinois. A copy of the Unit Purchase Agreement is attached hereto as Exhibit "A" and incorporated herein by this reference. Also, the $400,000 in dispute in this case was diverted to Gubin and Blisko's company Belhaven in Chicago, Illinois.

## THE PARTIES

3.      Plaintiff, Gillman is an individual, residing in Lincolnwood, Illinois. He is a Citizen of the State of Illinois.

4.      Defendant Gubin is an individual residing in South Bend, Indiana. He is a Citizen of the State of Indiana.

5.      Defendant Blisko is an individual residing in Chicago, Illinois. He is a Citizen of the State of Illinois.

6.      Defendant LBG Realty, LLC ("LBG") is an Indiana Limited Liability Corporation. On information and belief the Gubin and Blisko are members of LBG. LBG is a Citizen of the State of Indiana. Gubin is the manager of LBG.

7.      Defendant 2325 Pointe Parkway, LLC. ("2325") is an Indiana Limited Liability Corporation. On information and belief LBG owns an 100% interest in 2325. 2325 is a Citizen of the State of Indiana. Gubin is the manager of 2325.

8.     Defendant Belhaven is an Illinois Limited Liability Corporation. Belhaven is a Citizen of the State of Illinois and is owned and managed by Gubin and Blisko.

**COUNT I-BREACH OF CONTRACT**
**AGAINST LBG REALTY, LLC AND 2325 POINTE PARKWAY, LLC**

9.     In or about September 1, 2011, Gillman was approached by Gubin and Blisko regarding an investment opportunity of purchasing an office building in Carmel, Indiana (the "Building").

10.     Gillman initially invested $100,000, in exchange for a 25% participating percentage in an LLC called 2325 Pointe Parkway, LLC, which owned the Building. The 25% ownership interest that Gillman acquired was in his individual capacity, as reflected in the Operating Agreement for 2325, and on his Form K-1.  The remaining 75% ownership interest was held by LBG, whose members were Gubin and Blisko, with Gubin serving as its Manager.

11.     Gillman owned his 25% interest in his individual capacity.  Passages Hospice has never held an interest in 2325.

12.     An Operating Agreement memorializing Gilman's 25% interest was executed on or about September 27, 2011. See Exhibit "B," incorporated herein by this reference.

13.     Passages Hospice, a company owned and operated by Gillman's family, opened a satellite office in the Building as a tenant and paid monthly rent.

14.     In addition to the initial investment of $100,000, Gillman provided to 2325 an additional $112,500 in or about March 3, 2012, and an additional $50,000 in or about September 20, 2012 as responses to cash calls.

15.     In or about early December 2013, Gubin approached Gillman with an offer for LBG to buy his 25% membership interest.

16. In or about early December 2013, Gubin and Blisko both knew that Gillman was having personal financial difficulties and saw an opportunity to take advantage of him. They had no intention of ever paying Gillman. Rather, their scheme was to trick Gillman into first signing an agreement to document the relinquishment of his interest, and then not pay him for the purchase of his 25% membership interest. Their plan was to, after the ink had dried, tell Gillman that he was not going to get his $400,000 Purchase Price because the funds had been transferred to Belhaven (owned by Gubin and Blisko) to be applied to the repayment of an alleged debt by the entity Passages Hospice. They expected Gillman never to challenge their misconduct due to personal issues that Gillman was going through at the time.

17. Notwithstanding, Gubin and Blisko's decision and scheme to never pay Gillman, Gubin told Gillman in early December 2013 that in exchange for Gillman's membership interest, LBG would pay Gillman personally $400,000, to which Gillman agreed.

18. This Agreement for Gillman to sell his membership interest for $400,000 was reduced to a writing entitled "2325 Pointe Parkway, LLC Unit Purchase Agreement" (the "Agreement") was drafted by Defendants' attorney David Gross. A copy of the Agreement is attached hereto as Exhibit "A" and incorporated herein by this reference.

19. The Agreement provides that in consideration for Gillman's sale of his 25% membership units, LBG agreed to pay Gillman a Purchase Price of Four Hundred Thousand Dollars ($400,000). The closing date and the effective date of transfer was December 31, 2013.

20. Paragraph 13 of the Agreement provides that the "Agreement contains, and is intended as, a complete statement of all the terms of the agreement amongst the parties hereto with respect to the matters provided for herein, supersedes any previous agreements and understandings (whether written or oral) amongst the parties hereto with respect to those matters

4

and cannot be amended or changed except by a written instrument duly executed by or on behalf of all the parties hereto." There has never been any document purporting to amend or change the Agreement signed by all of the parties to the Agreement to provide that Gillman would not receive $400,000 in exchange for his 25% membership interest.

21.     While the Agreement provides that in exchange Gillman's 25% of membership units, Gillman would receive $400,000, LBG took Gillman's units but never paid Gillman any portion of the Purchase Price.

22.     Instead, Gubin and Blisko, through 2325 and LBG, unilaterally diverted the $400,000 that belonged to Gillman to Bellhaven Nursing and Rehabilitation Center, a nursing home owned Gubin and Blisko.

23.     After receiving the fully executed Agreement, Gillman e-mailed Gubin and asked "when does it fund?"

24.     Gubin responded that LBG was not going to remit any portion of the money to Gillman because Gubin had already applied the funds to retire a business debt allegedly owed to Belhaven by the entity Passages Hospice. Specifically, he stated "I already paid the 400k to Belhaven for you."

25.     "Belhaven" is "Bellhaven Nursing and Rehabilitation Center" It is owned by Gubin and Blisko, which are its managers.

26.     Gillman responded "I didn't ok that. The first I've heard. I need that to be paid to me."

27.     Gillman also wrote to Gubin that "[t]he building was owned by Seth Gillman. The debt is owned by a LLC Passages Hospice, which has members. There are machinations involved that cannot be leapfrogged." Gillman, individually, did not owe money to Belhaven.

28.     In addition, Gillman wrote Gubin that "[t]he sale proceeds need to be paid to Seth Gillman."

29.     Gubin, 2325 and LBG transferred Gillman's $400,000 to Bellhaven Nursing and Rehabilitation Center instead of to Gillman even though, the Unit Purchase Agreement (drafted by the Purchaser's Attorney, David Gross) provides that it is the "Selling Member" who was to receive the "Purchase Price" of $400,000.

30.     The Selling Member was defined in the Agreement as "Seth Gillman ("Gillman")" The term "Gillman" was not defined in the Agreement as to relate to Passages Hospice or any other business entity.

31.     In addition, nowhere in the Agreement does it provide that the $400,000 would be disbursed to Bellhaven Nursing and Rehabilitation Center.

32.     When Gillman told Gubin, 2325, and LBG that the Purchase Price needed to be paid to Gillman, and not to Belhaven, Gubin stated that he should look towards Passages Hospice for reimbursement. Gubin also stated "ask your bookkeeper, its an easy bookkeeping entry to clean it up" and "I can't reverse what I did," to which Gillman responded "Sure you can." A copy of the e-mail chain between Gubin and Gillman is attached hereto as Exhibit "C," and incorporated herein by this reference.

33.     Gillman performed all of his duties and obligations under the Agreement.

34.     LBG and 2325 have breached the Agreement by not tendering to Gillman the Purchase Price amount of $400,000, as required by Section 2 of the Agreement, despite LBG receiving Gillman's executed Agreement.

35.     As a direct and proximate cause of the breach, as aforesaid, Gillman has been damaged at an amount to be determined at trial, but not less than $400,000.

36.     The sum of $400,000 due and owing to Gillman is fixed and liquidated. The withholding of this sum constitutes and unreasonable and vexatious delay in payment. Accordingly, Gillman is entitled to pre-judgment interest on such sum at the statutory rate of five percent 5% per annum, pursuant to 815 ILCS 205/2.

**WHEEREFORE**, Plaintiff, SETH GILLMAN, prays for judgment in his favor and against LBG REALTY, LLC and 2325 POINTE PARKWAY, LLC, at an amount to be determined at trial, but no less than $400,000; statutory interest in accordance with Illinois law; the costs of this suit; and such other and further relief as this Court deems just and appropriate.

## COUNT II-BREACH OF FIDICIARY DUTY
## AGAINST MOISHE GUBIN

37.     Gillman repeats and re-alleges paragraphs 1 through 36 of this Complaint as and for paragraph 37 of Count II.

38.     As a Manager of 2325, Gubin stood in a fiduciary relationship to Gillman.

39.     Gubin had a fiduciary duty to Gillman that included, but was not limited to acting fairly when Gillman, a member, dealt with the company.

40.     As set forth herein, Gubin breached his fiduciary duties by not disclosing to Gillman in the Agreement (which Gubin signed as a manager of 2325) that Gillman would not be paid the Purchase Price and that instead the $400,000 purchase price would be kept by Gubin and Blisko and transferred to their company Belhaven. Gubin further breached his fiduciary duties through his failure to act honestly and in good faith with Gillman in the acquisition of Gillman's 25% membership interest.

41.     As a result of Gubin's breaches and bad faith Gillman has been damaged in an amount to be proven at trial, but no less than $400,000.

42.     Gubin acts were wanton and willful. Gubin acted with ill will, malicious intent and evil purpose and other individuals must be deterred from engaging in similar conduct, and therefore punitive damages should be awarded to the extent available in this forum.

**WHEREFORE**, Plaintiff SETH GILLMAN prays for judgment in his favor and against Defendant MOISHE GUBIN at an amount to be determined at trial, but no less than $400,000; statutory interest in accordance with Illinois law; the costs of this suit; punitive damages; that this Court order Gubin to make restitution to Gillman of all property, benefits, profits and/or unjust enrichment Gubin has received and will receive by virtue of any breach of trust and/or breach of the fiduciary duty owed and for such other and further relief as this Court deems just and appropriate.

### COUNT III
### AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### AGAINST MICHAEL BLISKO, 2325 POINT PARKWAY, LLC,
### LBG REALTY, LLC AND BELHAVEN

43.     Gillman repeats and re-alleges paragraphs 1 through 42 of this Complaint as and for paragraph 43 of Count III.

44.     On information and belief, Defendants Blisko, LBG, 2325 and Belhaven knowingly and substantially and significantly assisted Gubin's breach of fiduciary duty by permitting and assisting Gubin in diverting the $400,000 purchase price due to Gillman away from Gillman and instead to Belhaven, which accepted the proceeds despite its managers Gubin and Blisko knowing that the Agreement expressly stated that the $400,000 was to be paid to Gillman. At all times Defendants Blisko, LBG, 2325 and Belhaven knew or should have known that Gubin's breaches of the fiduciary duties owed to Gillman were improper.

45.     Due to Belhaven, LBG and 2325's and Blisko's wanton and willful conduct, Gillman is entitled to an award of punitive damages, in his favor, and against Blisko and Belhaven.

8

**WHEREFORE**, Plaintiff SETH GILLMAN prays for judgment in his favor and against Defendant MICHAEL BLISKO, 2325 POINT PARKWAY, LLC, LBG REALTY, LLC and BELHAVEN NURSING AND REHABILITATION CENTER, LLC at an amount to be determined at trial, but no less than $400,000; statutory interest in accordance with Illinois law; the costs of this suit; a declaration that Defendants Belhaven, LBG and 2325's and Blisko wrongly aided and abetted Gubin in his breaches of fiduciary duties; punitive damages; that this Court order Blisko, LBG, 2325 and Belhaven to make restitution to Gillman of all property, benefits, profits and/or unjust enrichment they have received or will receive by virtue of any breach of trust and/or breach of the fiduciary duty owed and for such other and further relief as this Court deems just and appropriate.

**COUNT IV**
**CONVERSION**
**AGAINST GUBIN, BLISKO, 2325 POINT PARKWAY, LLC, LBG REALTY, LLC**
**And BELHAVEN NURSING AND REHABILITATION CENTER, LLC**

46.     Gillman repeats and re-alleges paragraphs 1 through 45 of this Complaint as and for paragraph 46 of Count IV.

47.     Pursuant to the Agreement, Gillman has a right to the $400,000 Purchase Price for his 25% membership interest.

48.     Gillman has an absolute right to the immediate possession of the $400,000 Purchase Price, a specific fund, which Gubin has admitted was transferred to Belhaven, an entity that he owns along with Blisko.

49.     Defendants wrongfully and without authorization assumed control, dominion, or ownership over the Gillman's $400,000 Purchase Price.

50.     Gillman has made a demand for his $400,000 purchase price, which was denied. Due to Defendants' wanton and willful conduct, Gillman is entitled to an award of punitive damages, in his favor.

**WHEREFORE**, Plaintiff SETH GILLMAN prays for judgment in his favor and against Defendants MOISHE GUBIN, MICHAEL BLISKO, LBG REALTY LLC, BELHAVEN NURSING AND REHABILITATION CENTER, LLC, and 2325 POINTE PARKWAY at an amount to be determined at trial, but no less than $400,000; the return of the Purchase Price of $400,000; statutory interest in accordance with Illinois law; the costs of this suit; punitive damages; that this Court order Defendants to make restitution to Gillman of all property, benefits, profits and/or unjust enrichment they have received or will receive by virtue of any breach of trust and/or breach of the fiduciary duty owed, or conversion, and for such other and further relief as this Court deems just and appropriate.

**COUNT V**
**FRAUDULENT INDUCEMENT**
**AGAINST GUBIN, 2325 POINT PARKWAY, LLC, and LBG REALTY**

51.     Gillman repeats and re-alleges paragraphs 1 through 50 of this Complaint as and for paragraph 51 of Count V.

52.     Gubin's statement to Gillman in early December 2013 that Gillman would receive $400,000 in exchange for selling his 25% membership interest was a false statement of material fact, made as part of a scheme to defraud Gillman. That statement, also made on behalf of LBG and 2325 was known to be false by Gubin and was made with the intent to induce Gillman to act.

53.     Gillman reasonably acted in reliance of the truth of Gubin's representations that he would receive $400,000 in exchange for his 25% membership interest, which were further

Case: 1:16-cv-11527 Document #: 1 Filed: 12/21/16 Page 11 of 13 PageID #:11

reinforced by the Agreement that he was induced to sign which states that he sold his 25% membership interest, in exchange for $400,000.

54.     Gillman has been damaged in an amount to be determined at trial, but no less than $400,000, and the damage was proximately caused by the misconduct of Gubin, 2325 and LBG.

55.     Due to Defendants' wanton and willful conduct, Gillman is entitled to an award of punitive damages, in his favor.

**WHEREFORE**, Plaintiff SETH GILLMAN prays for judgment in his favor and against Defendant MICHAEL BLISKO, LBG REALTY, LLC and 2325 POINTE PARKWAY, LLC, at an amount to be determined at trial, but no less than $400,000; statutory interest in accordance with Illinois law; the costs of this suit; punitive damages, and for such other and further relief as this Court deems just and appropriate.

**COUNT VI**
**CONSTRUCTIVE TRUST**
**AGAINST BELHAVEN NURSING AND REHABILITATION CENTER, LLC**

56.     Gillman repeats and re-alleges paragraphs 1 through 55 of this Complaint as and for paragraph 56 of Count VI.

57.     Belhaven is reaping benefit from property that it acquired unfairly, as Gubin and Blisko transferred Gillman's $400,000 purchase price to Belhaven, where Gubin and Blisko are the owners and managers.

58.     It would be unconscionable to allow Belhaven to retain and enjoy the assets and benefits which were improperly obtained.

59.     Gillman is entitled to the imposition of a constructive trust over the Purchase Price amount of $400,00 belonging to Gillman, improperly obtained and held by Belhaven.

11

**WHEREFORE**, Plaintiff SETH GILLMAN prays that this court impress a constructive trust on the $400,000 Purchase Price that Defendant BELHAVEN NURSING AND REHABILITATION CENTER improperly obtained and that this Court award it its statutory interest in accordance with Illinois law, costs of this suit, and such other and further relief as this Court deems just and appropriate.

**COUNT VII**
**ACCOUNTING AND RESTITUTION**
**AGAINST ALL DEFENDANTS**

60.     Gillman repeats and re-alleges paragraphs 1 through 59 of this Complaint as and for Paragraph 60 of Count VII.

61.     Defendants owed and owe Gillman a duty to account for the benefits, profits, and unjust enrichment they have received will receive by virtue of Gubin's breaches of fiduciary duty and the remaining Defendants aiding and abetting of those breaches, or conversion.

62.     Defendants have failed to account to Gillman.

63.     Following an accounting, Defendants should make restitution to Gillman by restoring their ill-gotten gains to Gillman.

64.     Defendants have been unjustly enriched as a result of their ill-gotten gains. Alternatively, Gillman has incurred damages resulting from the breach of fiduciary duty and the aiding and abetting of the breach of fiduciary duty.

**WHEREFORE**, Plaintiff, SETH GILLMAN requests the following relief against all of the Defendants: (1) that this Court order defendants to account to Gillman for the benefits, profits, and unjust enrichment they have received and will receive by virtue of the breach of fiduciary duty owed to Gillman and aiding and abetting thereof, or conversion; (2) that this Court impress a constructive trust on all property, benefits, profits and unjust enrichment defendants have received

12

and will receive by virtue of their breach of fiduciary duty and the aiding and abetting thereof, or conversion; (3) that this Court order defendants to make restitution to Gillman of all property, benefits, profits and unjust enrichment defendants have received and will receive by virtue of their breach of fiduciary duty and the aiding and abetting thereof, or conversion; (4) that this Court enter a money judgment in favor of Gillman for the amount found to be due from the Defendants in said accounting; (5) alternatively, a money judgment in excess of $400,000 for the damages Gillman incurred due to Defendants' breach of fiduciary duty and aiding and abetting thereof and conversion; (6) Punitive damages authorized by law to punish defendants for their willful and wanton misconduct and deliberate invasion of Gillman's rights; (7) such other and further relief as this Court deems just and appropriate.

Dated: December 21, 2016                    Respectfully submitted,

Alon Stein (6278515)                        **SETH GILLMAN**
**STEIN LAW OFFICES**                       By: /s/ Alon Stein
1455 Golf Road, Suite 202                   One Of His Attorneys
Des Plaines, IL 60016
(847) 571-1805
astein@law-stein.com